UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN TARLECKI et al., on behalf of all others similarly situated, | No. C 05-01777 MHP |
| Plaintiffs, | **MEMORANDUM & ORDER** |
| v. | **Re: Plaintiffs' Motion for Final Approval, Attorneys' Fees, Costs and Incentive Awards** |
| BEBE STORES, INC., | |
| Defendant. | |

  Lead plaintiff Lauren Tarlecki and twenty-one other named plaintiffs brought suit against bebe Stores, Inc. ("defendant"), on behalf of all other similarly situated bebe employees, for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* On January 25, 2008, the court approved a preliminary settlement. Now before the court is the plaintiffs' motion for final approval, attorneys' fees, costs and incentive awards. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND[1]

  Plaintiffs, current and former bebe employees, initiated this action on April 28, 2005. Plaintiffs alleged that defendant's policy of requiring employees to wear defendant's clothing line required plaintiffs to purchase defendant's clothes, and that plaintiffs effectively earned less than minimum wage when the cost of said clothing is deducted from plaintiffs' salaries. On August 10, 2005, the court ordered the parties to submit to an alternate dispute resolution mechanism of their

choosing. The parties met before Judge Infante on February 13, 2006, and February 28, 2006, for two mediation sessions.

Following those sessions, the parties agreed to a settlement and to amend the original complaint to include all possible state law claims from the states of Arizona, California, Florida, Illinois, Massachusetts, Maryland, Michigan, Nevada, New Jersey, New York, Ohio, Oregon, Pennsylvania, Texas, Virginia and Washington, such that defendant could resolve all liability in this matter for all class members. Class members are defined as current and former female, hourly, non-management employees of defendant during the relevant class periods, which extend from as early as mid-2000 through March 9, 2006.[2] The parties submitted both a preliminary settlement motion and motion to amend the class complaint on February 5, 2007. After several rounds of amendments necessitated both by class member objections and the court's concerns, the court preliminarily approved the settlement on January 25, 2008.

The proposed settlement agreement on behalf of 11,586 class members involved a detailed calculation of what compensation each individual class member could receive based on an agreed-upon formula which took into account the length of time that each class member worked for defendant during the class period. Each class member could choose to receive either (1) a cash payment or (2) a gift card in the amount of the cash payment plus an additional twenty percent. The maximum total possible amount of recovery for all class members ranged from $1,357,654.00 in cash if all accepted the cash payment to $1,629,174.00 in gift card credit if all accepted the gift card payment. See Docket No. 85 (Second Myette Dec.) ¶¶ 3-4. A class member in a state with the longest statute of limitations could obtain over $1,300; a class member working for defendant for a year could receive $212. There was no settlement fund created—the defendants would be held liable solely for the amount claimed by the class members based upon the agreed-upon formula. Docket No. 68-2 (Settlement Agreement) ¶¶ 37 & 44. Defendant also modified its Appearance Guidelines Policy as of March 9, 2006, to more clearly reflect that employees were neither required nor expected to purchase or wear bebe clothing. Id. ¶ 29.

The proposed settlement agreement further provided for attorneys' fees and costs of $290,000.00, an amount paid in addition to the amount paid to the class, as well as incentive awards in the amount of $4,000 for lead plaintiff and $400 for each of the other twenty-one named plaintiffs. Id. ¶¶ 38 & 48. This would result in a total incentive award of $12,400 for the twenty-two named plaintiffs. The amount of the attorneys' fees was included in the notice agreement sent to the class members, and the class members were informed that the named plaintiffs may receive an incentive fee but were not told the amount that would be requested.

The class notification period ended on April 15, 2008. Docket No. 81 (First Myette Dec.) ¶ 8. Counsel for both parties agreed to accept all claims sent prior to April 25, 2008. Id. ¶ 11. Of the 11,586 class members, only 2,017 valid claims were submitted, resulting in a settlement value of $336,315.40 in cash and gift cards. Id. This represents both those class members who selected cash settlements ($231,283 of the total) and gift card settlements ($105,032.40 of the total). Id. The gift cards never expire and are freely assignable. See Docket No. 88 (Transcript of March 19, 2008, Hearing) at 5:4-5. A total of eighty-five class members opted out. Docket No. 81 (First Myette Dec.) ¶ 12. Two class members objected. Id. ¶ 13. One objection was lodged by a class member's father, which the class member later disavowed, and the other objection related to the perceived inadequacy of the amount each class members would receive. The parties submitted a motion for Final Approval on May 5, 2008.

In litigating this action, plaintiffs' counsel expended over 800 hours and incurred litigation-related costs of $30,244.53. See Docket No. 82 (Proposed Order) at 14. The four lead plaintiffs' attorneys' normal fees range from $275 to $400 per hour. Id. Plaintiffs' counsel estimate a lodestar slightly in excess of $285,000. No multiplier is sought. Plaintiffs' counsel investigated one hundred putative class members, exchanged written discovery, defended the deposition of lead plaintiff and conducted a Rule 30(b)(6) deposition of defendant.

3

LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). To make this determination, the court considers various factors, including: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). The settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

DISCUSSION

The court is troubled by the proposed settlement in two ways. First, the claimed settlement amount is only a fraction of the proposed settlement amount, benefitting only a small percentage of the class. Second, the attorneys' fees now equal approximately eighty-six percent of the amount actually recovered by class members.[3]

When this action came before the court for preliminary approval, defendant had agreed to a method of calculating payments that would provide a class recovery of as much as $1,357,654 in cash or $1,628,174 in gift cards, plus attorneys' fees and costs. What defendant will actually pay in settlement of the various claims is $336,315.40 in cash and cards, plus attorneys' fees and costs. This amounts to only twenty-two to twenty-five percent of what defendant could have paid.[4] Moreover, despite the fact that the class members needed only return a form indicating length of employment by defendant, and despite the potential for a recovery of more than one thousand dollars by some class members, only eighteen percent of the class was motivated to respond in any way to

4

the claim notice, and only seventeen percent of the class submitted valid claim forms.[5] The court recognizes that the class membership may, to some extent, comprise young and relatively transient individuals. These percentages are nevertheless disturbingly low considering the likelihood that the sums involved were not inconsequential for these class members.

The proposed settlement does not create a settlement fund. This means that the unclaimed amounts revert back to defendant. While such an arrangement is not per se illegitimate, the court is nevertheless hesitant to grant final approval, given the current status of the class benefit. Currently, defendant is set to pay only a small percentage of the settlement preliminarily approved by the court. The possibility that defendant would have to pay only a portion of the potential recovery was likely a factor in its decision to accept settlement. Yet defendant could and should not have banked on the fact that such a small fraction of the class members would respond. In short, the fact that only seventeen percent of the class will benefit from this class action bespeaks poorly of the settlement. Instead of an action undertaken to make damaged class members whole, this action now appears primarily to benefit plaintiffs' counsel and defendants.

Perhaps most troubling is the fact that the requested attorneys' fees now equal eighty-six percent of the settlement amount, i.e., forty-six percent of the combination of recovery and attorneys' fees.[6] See Staton, 327 F.3d at 964 ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained."). While FLSA-governed attorneys' fees awards may be either negotiated or calculated as a percentage of the "common fund," see id. at 967, the court must, in any event, determine that the award is inherently fair. Id. at 964. The court cannot ignore the fact that the relation of attorneys' fees to recovery in the proposed settlement is significantly at variance with the twenty-five percent "benchmark" usually awarded in common fund settlement cases. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

Simply awarding less than plaintiffs' requested attorneys' fees and costs may not adequately address the problems with this settlement. While plaintiffs' counsel would then be compensated at a

5

more reasonable percentage as compared with the restitution given to the class, the excess amount would revert to the defendants. As the Ninth Circuit recently noted in a non-precedential decision, attorneys' fees "reversionary clauses"—clauses in which unpaid attorneys' fees monies return to the defendant—are problematic. Glass v. UBS Fin. Servs., Inc., 2009 WL 306120, at *2 (9th Cir. Feb. 9, 2009). Such clauses remove the economic incentive of class members to challenge the attorneys' fees and provide one less reason for the court to reduce the award, because that would, in essence, help a defendant who has all but admitted to violating the law. Id. at *2 n.2. Here, although there is no reversionary clause per se, there is the functional equivalent of one. Because the requested $290,000 would be paid in addition to any amount given to the class, any excess money reverts back to the defendant if the court declines to award the entirety to plaintiffs' counsel.

The court could perceive a greater justification for awarding the requested attorneys' fees and costs if they reflected a more reasonable percentage of what was actually paid by defendant. There are two possible methods that may allow the settlement to proceed. First, the two parties may negotiate a cy pres payment to a court-approved organization in an amount which would allow the attorneys' fees to more accurately reflect a reasonable percentage of the total settlement amount, including the funds paid to the cy pres. Second, the parties may undertake a further round of claim notices and attempt to increase the number of class members made whole by this settlement. The court recognizes that a second round of claim notices would necessitate a non-trivial expenditure.

Nevertheless, as the settlement currently stands, the court would be hard-pressed either to grant final approval to the settlement or to grant the requested $290,000 in attorneys' fees. As it stands, the proposed settlement is not "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Accordingly, the parties are ordered to meet and confer for the purposes of agreeing upon a way forward consistent with this memorandum and order. Upon arriving at an agreement, the parties shall prepare a joint statement for the court outlining the parameters, including proposed dates, of further actions the parties plan to take to remedy the deficiencies in the settlement. At that point, the court will reexamine the merits of plaintiffs' motion.

CONCLUSION

Plaintiffs' motion for final approval of the settlement agreement, attorneys' fees, costs and incentive awards is DENIED without prejudice. The parties are ordered, as described above, to meet and confer within thirty (30) days of entry of this order and to submit to the court a joint statement within thirty (30) days thereafter. This matter is set for a status conference on August 3, 2009, at 2:00 p.m. to review the statement and any proposals presented by counsel.

IT IS SO ORDERED.

Dated: May 13, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Unless otherwise indicated, the information here recited is drawn from Docket No. 77 (Final Approval Mot.).

2. The class periods differ by state due to varying statutes of limitations. The FLSA claims and the state claims except as listed below would be settled for the period between May 1, 2003, and March 9, 2006. The California subclass claims would be settled for the period between July 1, 2002, and March 9, 2006. The Illinois subclass claims would be settled for the period between September 15, 2001, and March 9, 2006. The New York and Oregon subclass claims would be settled for the period between September 15, 2000, and March 9, 2006. See Docket No. 76-2 at 1.

3. $290,000 / $336,315.40 = 86.23%. This calculation generously assumes that one dollar of gift card credit is of equal value to one dollar of cash. If the amount to be paid out in gift card credit is discounted by 20%, the ratio of attorneys' fees to recovery is even higher.

4. $336,315.40 / $1,629,174 = 20.64%. $336,315.40 / $1,357,654 = 24.77%.

5. 2,104 / 11,586 = 18.16%. 2,017 / 11,586 = 17.41%.

6. $290,000 / ($336,315.40 + $290,000) = 46.30%.