UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAUREN TARLECKI, et al., individually and
on behalf of a class of similarly situated
employees,

          Plaintiffs,

  v.

BEBE STORES, INC.,

          Defendant.

                                   /

No. C 05-1777 MHP

**MEMORANDUM & ORDER**

**Re: Final Approval of Settlement and
Award of Attorneys' Fees and Costs**

Lead plaintiff Lauren Tarlecki and twenty-one other named plaintiffs, individually and on behalf of a class of similarly situated employees, brought this action against defendant bebe Stores, Inc., alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* and similar state statutes. On January 25, 2008, the court approved a preliminary settlement. Now before the court is plaintiffs' fourth motion for final approval of settlement terms, attorneys' fees, costs and incentive awards. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND

Plaintiffs represent a class of all female, hourly paid, non-management store employees who worked in a sales or support positions at one or more of bebe's stores in one of several states or Puerto Rico, during the class period, and who claim they were required or pressured by bebe to

**United States District Court**

For the Northern District of California

1  purchase and/or wear bebe clothing or accessories without receiving reimbursement for their

2  purchases. *See* Docket No. 76 (Prelim. Approval Order) at 1-2.

3      Defendant bebe Stores, Inc., a California corporation, owns and operates over two hundred

4  clothing stores across the nation. *See* Docket. No. 12, Exh. 1 (Complaint) ¶ 7.  This action

5  commenced on April 28, 2005, when named plaintiff Lauren Tarlecki, seeking to represent a

6  national class, brought suit under the federal Fair Labor Standards Act.  The parties engaged in

7  mediation, pursuant to the court's request, and subsequently agreed to the terms of a settlement.  The

8  parties subsequently filed three motions for final approval of settlement and award of attorneys'

9  fees.  On May 14, 2009, the court rejected the third motion for final settlement approval and

10  attorneys' fees.  Docket No. 95.  On July 20, 2009, the parties filed a joint statement discussing ways

11  to address the court's concerns.  The court filed an order on August 3, 2009, requesting additional

12  submissions.  In response, plaintiff filed the instant motion with supporting documents.  Now before

13  the court is plaintiffs' fourth motion for approval of the settlement and award of attorneys' fees.

14      The parties identified 11,586 current and former employees who may have had claims in the

15  present action and mailed them a court-approved notice. *See* Docket No. 81 (First Myette Dec.) ¶ 8.

16  In order to submit a claim, and become part of the class, a notice recipient had to affirm that she

17  "believe[d] that [she] was required by bebe policy or by bebe manager(s) to purchase and wear to

18  work bebe clothing and/or apparel." *See* Docket No. 76 (Claim Form) at 3.  Absent this affirmative

19  opt-in procedure, an individual receiving notice would not qualify as a member of the class, which

20  was defined as "all . . . employees who claim they were required to purchase . . . bebe clothing." *See*

21  *id.* (Prelim. Approval Order) at 1-2.  2,017 individuals submitted claim forms, two of which objected

22  to the terms of the settlement.[1] *See* Docket No. 81 (First Myette Dec.) ¶ 13.  To exclude themselves

23  from the preclusive effects of the settlement under state law, notice recipients were required to

24  affirmatively opt-out of the class.  Eighty-five did so. *Id.* ¶ 12.  Class members claimed $231,283 in

25  cash and $105,032.40 in gift cards, according to the terms of the settlement, for a total of

26  $336,315.40.[2] *Id.* ¶ 8.

27

28

1    In this motion for final approval of settlement, plaintiffs' counsel requests $290,000 for costs

2 and fees, an incentive award of $4,000 to plaintiff Tarlecki, and $400 each for the twenty-one other

3 named plaintiffs. *See* Docket No. 102 (Mot.) ¶ 2.

4

5 LEGAL STANDARDS

6 I.    Settlement Fairness

7    Federal Rule of Civil Procedure 23(e) requires the court to determine whether a final

8 settlement binding upon class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

9 "It is the settlement taken as a whole, rather than the individual component parts, that must be

10 examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The

11 settlement may not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp.*

12 *Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

13 II.    Reasonable Attorneys' Fees

14    Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court

15 may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the

16 parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements where the fees are deducted

17 from the common fund, the approval of the settlement agreement as a whole does not depend on the

18 quantum of the fees. *Staton v. Boeing Co.,* 327 F.3d at 938, 972 (9th Cir. 2003). If, on the other

19 hand, the parties negotiate the fees independently of the amount recovered by the class, the court

20 must consider the reasonableness of the fees, as well as the complex incentives giving rise to the

21 agreement, as part of its evaluation of the settlement's adequacy and fairness. *Id.*

22

23 DISCUSSION

24    In its evaluation of the settlement terms, the court may consider some or all of the following

25 factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further

26 litigation; the risk of maintaining class action status throughout the trial; the amount offered in

27 settlement; the extent of discovery completed, and the stage of the proceedings; the experience and

28

3

United States District Court
For the Northern District of California

1   views of counsel; the presence of a governmental participant; and the reaction of the class members

2   to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009);

3   *accord Staton,* 327 F.3d at 959.  The list is not exhaustive, and the importance of the specific factors

4   varies from case to case. *See Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d

5   615, 625 (9th Cir. 1982).

6         In the present action, the adequacy and fairness of the settlement have been in doubt because

7   of the low number of claim forms submitted relative to the potential size of the class and the

8   manifest disconnect between the requested attorneys' fees and the actual amount recovered by the

9   class.  Each are discussed below.

10  I.       Low Repsonse Rate

11        The court expressed concern about the low response rate—approximately eighteen

12  percent—by the class.  It is possible that the low level of participation in this case signals the relative

13  weakness of the underlying claim.  Class members may not have been willing to aver under penalty

14  of perjury that they were required to purchase or wear bebe merchandise.  The relatively transitory

15  nature of retail clothing employees suggests that an additional round of notices would do little to

16  help compensate those who were damaged by defendant's practices.  Because of the low likelihood

17  of success of additional notice procedures, the court finds that the imposition of an additional notice

18  requirement to be unwarranted.

19  II.      Reasonableness of Attorneys' Fees

20        In response to the court's concerns, the parties appeared to have at least discussed the

21  possibility of reducing attorneys' fees to $150,000, rather than the $290,000 (including costs)

22  initially requested.  In any event, the 2,017 class members will recover a total of $336,315.40 in cash

23  and gift cards.  Plaintiffs' counsel has now made it clear that counsel still hopes to obtain the entire

24  $290,000 as a fee award; this represents approximately 86.2% of the total amount recovered by the

25  class.  Plaintiffs' counsel argues that the attorneys' fees request is appropriately compared to the

26  amount the class could have recovered if all 11,586 individuals who received notice had returned

27  claim forms. According to plaintiffs' counsel's calculations, the total amount made available to the

28

4

United States District Court

For the Northern District of California

1  class was $1,357,654 in cash.  Thus, counsel's fees would have amounted only to a modest 21.3% of

2  the fund made available to the class.

3  Class counsel relies on *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir.

4  1997), in arguing that the court must award fees relative to the potential, rather than the actually

5  claimed, benefit secured for the class, even if the unclaimed benefits revert back to the defendant.

6  *Williams* was a common fund case in which the parties had agreed on a total settlement value against

7  which all claims could be lodged, including the counsel's own claim for fees.  *Id.* at 1027.  As a

8  result, in *Williams*, class members had incentive to oppose the proposed attorneys' fees, whereas in

9  the present action, any reduction in attorneys' fees would leave class recovery unchanged.

10  In determining attorneys' fees, "the district court has discretion . . . to choose either the

11  percentage-of-the-fund or the lodestar method" to determine what constitutes a reasonable fee.

12  *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).  Courts usually apply the

13  percentage method but then use the lodestar method to cross-check the reasonableness of the

14  percentage to be awarded.  *See, e.g., Vizcaino*, 290 F.3d at 1047, 1050; *Glass v. UBS Fin. Servs.,*

15  *Inc.*, 2009 WL 306120, at *2 (9th Cir. Feb. 9, 2009) (applying and discussing the percentage

16  method).

17  Plaintiffs' counsel has acknowledged this court's concern about awarding attorneys' fees in

18  an amount nearly as high as the amount plaintiffs themselves will recover under the settlement.  In

19  the parties' Joint Statement Regarding Final Approval of Settlement, dated July 20, 2009, plaintiffs'

20  counsel suggested a fee award of $150,000, in addition to actual costs, in order to potentially satisfy

21  this court's concerns with the proposed attorneys' fee amount.  *See* Docket No. 98 (Joint Statement)

22  at 7 n.3 ("While Plaintiffs' counsel do not believe that any reduction in fees is necessary as stated

23  herein, in the event that this court wishes to make a reduction of the fees paid to Plaintiffs' counsel,

24  counsel suggests that a fee award of $150,000, in addition to actual costs, may satisfy this court's

25  concerns.").

26

27

28

**United States District Court**
For the Northern District of California

5

A.     Percentage Method

In the Ninth Circuit, the "benchmark" percentage for the fee award should be 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d at 268, 272 (9th Cir. 1989).  This percentage may be adjusted up or down as warranted by the circumstances of the case.  *Paul, Johnson*, 886 F.2d at 272.  "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.

The Ninth Circuit has set forth a non-exhaustive list of factors which may be relevant to the district court's determination of the percentage ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048-50.

Plaintiffs' counsel achieved positive results for the class by settling to plaintiffs' benefit a case which may have been weak on the merits.  The rapidity with which the matter was settled may also play a role in determining an appropriate fee award.  *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 88 (E.D.N.Y. 2003) (awarding 12% fee considering lack of extensive motion practice, appeals or discovery). Similar to *In re Twinlab*, this case lacked extensive motion practice and was settled early in the litigation process.  Early settlement is, of course, to be encouraged.  The court weighs this consideration in the balance but nevertheless finds a downward departure from the twenty-five percent benchmark figure to be warranted.

Additional factors present in this case weigh in favor of departing from the benchmark percentage.  As noted, the merits of the case are uncertain.  After four years, less than one fifth of the expected number of individuals actually opted into the class, denoting that counsel's estimates were unduly optimistic, that class members did not feel they were wronged, or that class members did not value the benefit high enough to warrant filing a claim.  In *Yeagley v. Wells Fargo & Co.*, this court found that "to award class counsel the same fee regardless of the claim participation rate . . . would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class."  *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083 (N.D. Cal. 2008) (Breyer,

6

1   J.). On the other hand, given the difficulties confronting plaintiffs' counsel, there was some risk in

2   taking on this case.

3           Because of the rapid settlement of the case, the small recovery of class members relative to

4   potential class recovery, and the potential lack of merits of the underlying action, the court finds a

5   reduction from the standard 25% recovery rate is necessary. The court also finds that the suggested

6   award of $150,000 may be too stingy. Guided by the principle that a fee award must be reasonable

7   under the circumstances, the court awards plaintiffs' counsel $200,000.

8           B.      Lodestar Cross-Check

9           The "lodestar is the product of reasonable hours times a reasonable rate." *City of Burlington*

10  *v. Dague*, 505 U.S. 557, 559 (1992) (citations omitted). The Supreme Court has established a

11  "strong presumption" that lodestar fees are reasonable. *Id.* at 562. Plaintiffs' attorney bears the

12  burden of submitting detailed records documenting "the hours worked and rates claimed." *Hensley,*

13  461 U.S. at 434. The court may reduce those hours if the documentation is inadequate, the

14  submitted hours are duplicative or inefficient, or the requested fees appear excessive or otherwise

15  unnecessary. *Id.; see also Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

16          The four lead plaintiffs' attorneys' normal fees range from $275 to $400 per hour. *See*

17  Docket No. 82 at 14. Plaintiffs' attorneys Stephen P. Connor and Anne-Marie E. Sargent, whose

18  fees are $350 per hour and $275 per hour respectively, spent 389 hours on this case, totaling

19  $117,115.85 in fees. Plaintiffs' attorney Gary Lynch, whose fee is $400 per hour, spent 453.95

20  hours on this case for a total of $181,580.00. *See* Mot., Exh. 1. Adding these fees together, the

21  lodestar fee calculation totals $298,695.85. Plaintiffs' counsel claim they are owed fees to date in

22  the amount of $309,797.50.

23          An award of $200,000 is less than the lodestar amount. As described above,  the nature of

24  this case warrants a reduction in the overall fee calculation. Based on the work that was actually

25  done in this case, the court finds that work in the amount of $200,000 is, or should have been,

26  sufficient to accomplish what plaintiffs' counsel accomplished.

27

28

United States District Court

For the Northern District of California

7

1  III.    Reimbursement of Litigation-Related Expenses

2         Plaintiffs' counsel request costs in the amount of $30,245.37.  A review of the proceedings in

3  this action does not suggest any irregularities in that amount.  Accordingly, the court awards full

4  costs' to plaintiffs' counsel.

5  IV.    Incentive Awards

6         Plaintiffs' counsel requests incentive awards of $4,000 to lead plaintiff Lauren Tarlecki and

7  $400 each to the other 21 named plaintiffs in this case, totaling $12,400 for all named plaintiffs

8  including Tarlecki.  A court has the discretion to award incentive fees to named class representatives

9  in a class action suit.  *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995)

10 (Williams, J).  When determining incentive awards, courts may consider a variety of factors,

11 including risks to class representatives in commencing the suit, personal difficulty encountered by

12 class representatives, the amount of time and effort spent by class representatives, and the personal

13 benefit enjoyed by representatives as a result of the litigation.  *Id.*  Although this litigation resolved

14 quickly, some incentive award for the named plaintiffs is warranted and the court concludes the

15 proposed amounts are reasonable.  Therefore, lead plaintiff Lauren Tarlecki shall receive an award

16 of $4,000 and each other named plaintiff shall receive a $400 award.

17 V.    Cy Pres

18        In the present circumstances, the court disapproves of the potential reversion to defendant of

19 the funds representing reduced attorneys' fees.  Defendant has agreed to pay to a *cy pres* fund the

20 difference between the agreed $290,000 cap on attorneys' fees and costs and those actually awarded.

21 The court has awarded less than the $290,000 in fees and costs requested by plaintiffs' counsel.

22 Accordingly, the parties being unable to agree on the donee, the court instructs that the remaining

23 balance shall be donated to the Volunteer Legal Services Program of the Bar Association of San

24 Francisco.

25 /////

26 /////

27 /////

28

United States District Court
For the Northern District of California

1  CONCLUSION

2      Plaintiffs' instant motion for final approval of the settlement agreement, and award of

3  attorneys' fees, costs and incentive awards is GRANTED.  Plaintiffs' counsel shall be awarded

4  attorneys' fees in the amount of $200,000 and costs in the amount of $30,245.37.  Named plaintiffs

5  shall be awarded $400 each except for lead plaintiff Lauren Tarlecki, who is awarded $4,000.  The

6  residual amount, i.e., the difference between the $290,000 in attorneys' fees, costs and incentive fees

7  agreed between the parties and the actual amount awarded, or $47,354.63, shall be awarded to the

8  Volunteer Legal Services Program of the Bar Association of San Francisco.

9

10      IT IS SO ORDERED.

11

12

Dated: November 3, 2009

13                                                    MARILYN HALL PATEL
                                                     United States District Court Judge
14                                                   Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ENDNOTES**

1.      Kristine Hoppe, who is a plaintiff in a state court suit against bebe, has renewed her objection to elements of the settlement. *See* Docket No. 99.  Hoppe does not, however, dispute that she opted out of the class.  Since she is not a class member, she has no standing to object to the settlement. *See* Fed. R. Civ. P. 23(e)(5); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007) (Chesney, J.).

2.      Of course, one dollar of gift card credit does not have the same value as one dollar in cash, as evidenced by the fact that the majority of class members who returned claim forms chose the latter despite the twenty percent premium on the former.